**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **D.T.B., a minor child by his next friend,** **Daniel J. O'Callaghan, et al.** | : : : | Civil Action No. 05-cv-4309 (PGS) |
| Plaintiffs, | : : | |
| v. | : : | |
| **Hon. John B. Dangler, J.S.C., et als.** | : : | **OPINION** |
| Defendants. | : : | |

**SHERIDAN, U.S.D.J.**

The plaintiff, a pro se attorney, suing on behalf of himself and his minor child, brings this action for declaratory relief, injunctive relief, and compensatory damages. The Complaint suggests that plaintiff's action is directly related to unfavorable rulings and unwelcomed adversarial and court appointed advocacy in custody, visitation, and/or paternity proceedings at the state level. Defendants Peter C. Harvey (in his capacity as Attorney General) and the Hon. John B. Dangler, J.S.C., have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Defendant Susan Edwards and Defendant Einhorn, Harris, Ascher, Barbarito, Frost & Ironson, P.C. ("Einhorn Harris") have joined in the motion.

The facts of this case, which are only provided in plaintiff's Complaint, are obscure and difficult to follow. The following is an attempted recitation of the factual portion of the plaintiff's confusing and almost incomprehensible pleading.

In or around June 2000, Plaintiff Daniel O'Callaghan ("plaintiff") filed a Complaint in the New Jersey Superior Court, Family Division, against his former spouse, identified as "VRB," for inhibiting and preventing plaintiff's right to visit and communicate with his plaintiff son, DTB ("DTB"). In August of 2000, plaintiff alleges that VRB and David F. Salvaggio, Esq., identified only as an attorney and presumed to be VRB's counsel at one point, submitted to the Court an "unexamined letter" from a "fake New York psychologist" which had the continuing effect of preventing the plaintiff from visiting and/or communicating with his son.

In August of 2002, the Hon. David B. Rand, J.S.C., directed that both parents and the child undergo a psychological evaluation. Dr. L, who allegedly undertook to interview and evaluate the individuals, issued a report which plaintiff alleges to have recommended immediate and extensive father-son association, immediate therapeutic counseling for the child, and rejection of boarding school enrollment at the American Boychoir School. Plaintiff alleges that Judge Rand adopted the recommendations of Dr. L; however, upon an emergent application to the Appellate Division, VRB, through her new attorneys, Einhorn Harris, obtained an order permitting the enrollment of DTB in the American Boychoir School, staying all proceedings before Judge Rand, and discontinuing the therapeutic counseling recommended by Dr. L.

On October 29, 2002, the Appellate Division rendered an opinion affirming the rulings of the Hon. John J. Harper, J.S.C., who had handled the matter prior to Judge Rand. Thereafter, Judge Rand held a conference on January 15, 2003 in which Judge Rand allegedly "encouraged and authorized Einhorn to participate in a 'sanctions' and defamation per se proceedings against the Plaintiff-father." The plaintiff further contends that Judge Rand made defamatory statements against the plaintiff and ordered a "*Gulaguesque* mental health examination."

On July 1, 2003, the Appellate Division issued a second opinion which, as interpreted by the plaintiff, ordered the matter be remanded to the Superior Court for a plenary hearing in connection with the issues of boarding school and the father's "right(s) to any form of 'custody.'"

In light of the second Appellate Division opinion, Judge Rand held a conference on July 30, 2003, at which time it is alleged that Judge Rand admitted that the proceedings on January 15, 2003 were without jurisdiction, and rather than hold a plenary hearing, as ordered by the Appellate Division, the court would impose new conditions, including a *Gulaguesque* mental health examination. Plaintiff claims to have complied with the court's direction and was examined by Dr. A, who issued a report dated July 30, 2003. The report was submitted to Judge Rand on an application in the form of an Order to Show Cause on August 18, 2003.

In the meantime, the matter was transferred from Judge Rand to the Defendant Hon. John B. Dangler, J.S.C., who heard the Order to Show Cause on September 8, 2003. It is alleged that Judge Dangler (a) implemented the new conditions added by Judge Rand; (b) failed to "expeditiously manage" the case, as ordered by the Appellate Division's first opinion, by further postponing proceedings until September 26, 2003; (c) denied all applications for relief including the demand for a plenary hearing as directed by the Appellate Division's second opinion; (d) refused to re-implement therapeutic counseling as recommended by Dr. L and adopted by Judge Rand; and (e) refused to direct an investigation and/or hearing regarding VRB as recommended by Dr. A and Dr. L.

Then, in October 2003, Defendant Susan Edwards, Ph.D., a licensed psychologist, who is claimed by plaintiff to be VRB's therapist, was authorized by Judge Dangler to intervene in the

3

matter in support of DTB's continued enrollment at American Boychoir.[1] It is further alleged that the intervention of Edwards was at the insistence of Einhorn Harris. Edwards issued a report which was submitted to Judge Dangler on October 8, 2003, and subsequently sealed on October 17, 2003. Plaintiff, thereafter, alleges that Edwards, in or around October or November 2003, wrongfully intervened and supported a matter venued in New York which plaintiff describes as an action by Defendant Adam Sifre, Esq. for "fraudulent malicious prosecution/punitive damages."[2] At oral argument, plaintiff conceded that he did not know whether Edwards intervened; but somehow a copy of her report pursuant to Judge Dangler's order was received by the New York court. It is claimed that over the period from October 2003 through December 2004, plaintiff made several applications to Judge Dangler and the Appellate Division to restrain Edwards' conduct, however, each request was denied.

In April 2004, at the alleged insistence of Einhorn Harris and against the objections of the plaintiff, Judge Dangler ordered that DTB be permitted to attend an excursion to Latvia through the American Boychoir.

On September 9, 2004, against the wishes of the plaintiff, Judge Dangler opted for a private interview of DTB, and also awarded counsel fees against the plaintiff and imposed "further burdensome, unusual requirements upon plaintiff-father for any visitation."

---

[1] At oral argument, plaintiff conceded that Edwards' involvement was the result of an order issued by Judge Dangler.

[2] While the Complaint states that Einhorn Harris improperly submitted Edwards' report to the Supreme Court of the State of New York, at oral argument, plaintiff maintained that Edwards submitted the report to the New York court. Attached to plaintiff's Complaint is a cover letter from Edwards to the New York court, dated October 11, 2003, which plaintiff maintains enclosed the report.

At some point, plaintiff moved for an interlocutory appeal of various rulings of Judge Dangler, citing the court's failure to abide by the two prior Appellate Division opinions. On November 15, 2004, the Appellate Division denied the motion for an interlocutory appeal, which plaintiff maintains continued the "concealment of misconduct and disinterest in the child."

As of result of the aforementioned, the plaintiff claims that defendants have denied the plaintiff due process and equal protection, resulting in only 76 days of "association" with DTB over the course of 6 years.

II.

In a nearly identical matter, filed on May 24, 2005, captioned *O'Callaghan v. Sifre*, Civil Action No. 05-2680 (D.N.J. August 4, 2005)(Pisano), Judge Pisano dismissed the Complaint *sua sponte*, prior to any defendants answering, finding that the "Complaint fails to conform to Rule 8(a) of the Federal Rules of Civil Procedure 'requiring a short and plain statement of the claim,' as the Complaint is confusing, unnecessarily verbose, and there is no cognizable claim that can be gleaned from the pleadings."

While plaintiff removed one defendant from the prior Complaint and reduced the pleading from 36 pages to 24 pages, the factual portion of the Complaint remains "confusing," "unnecessarily verbose," and difficult to understand or glean a cognizable claim.

Allowing time to amend the Complaint will not likely cure the insufficiencies of this Complaint. Accordingly, the Complaint is dismissed pursuant to Rule 8(a). However, the Complaint must also be dismissed on other grounds.

III.

Defendant Peter C. Harvey, named in his capacity as Attorney General, is not mentioned

anywhere in the factual portion of the Complaint. More importantly, Harvey is not mentioned in plaintiff's claims for relief. As no claim has been asserted against Defendant Harvey, the matter against Harvey is dismissed for failure to set forth a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000); *5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357*.

IV.

Of the five claims for relief, the plaintiff seeks three declaratory judgments pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201. The Act provides, in relevant part:

> In a case of actual controversy within its jurisdiction...any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

It is well settled law that a court's exercise of jurisdiction with regard to complaints filed pursuant to this Act is discretionary. *Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); *Travelers Ins. Co. v. Davis*, 490 F.2d 536, 543 (3d Cir. 1974). "Said discretion is to be exercised in accordance with sound judicial principles and the purposes of the Declaratory Judgment Act." *Shell Oil Company v. Frusetta*, 290 F.2d 689 (9th Cir. 1961).

> The object of the statute (the Federal Declaratory Judgment Act) is to afford a new form of relief where needed, not to furnish a new choice of tribunals or to draw into the federal courts the adjudication of causes properly cognizable by courts of the states. The . . . statute should not be used to secure a judgment which would impinge on a state proceeding and which might result in a conflict between the decisions of state and federal courts. The Act is not a substitute for an appeal from a state judgment, nor does it convey to a federal court the power to review a state court decision.

*Travelers*, 490 F.2d at 543-44. (Internal quotations, citations, and footnotes omitted).

In deciding whether to hear a declaratory judgment action, a court must consider: (1) whether a declaratory judgment would settle the controversy; (2) whether declaratory relief would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory relief has been initiated to provide an arena for a race for *res judicata*; (4) whether declaratory relief would create friction between the state and federal courts and improperly encroach on state jurisdiction; and (5) whether an alternative remedy exists that is more effective. *Aetna Casualty & Surety Co. v. Pellecchia*, 1991 WL 101457 (E.D. Pa)(citing *American Home Assurance Co. v. Evans*, 791 F.2d 61, 63 (6th Cir.1986)).

Since any ruling rendered by the District Court would not settle the controversy, would not serve a useful purpose in clarifying legal relations, would be used in a race for *res judicata*, would strip the Appellate Division and Supreme Court of New Jersey of their authority to review and would encroach upon the state's jurisdiction, this Court will not exercise jurisdiction over these matters. The existence of appellate review at the state level affords the plaintiff an alternative and more effective remedy.[3] Counts 1, 2, and 4 seeking declaratory relief are dismissed with prejudice.

V.

The Complaint also seeks compensatory damages against Defendant Edwards.

---

[3] While the Court may chose not to decide the issue, with specific respect to the declaratory relief sought against Judge Dangler, it is notable that in *Hawkins v. Supreme Court of New Jersey*, 174 Fed.Appx. 683 (3d Cir. 2006), the Third Circuit found that a dismissal of declaratory relief was appropriate in addition to dismissal under principles of immunity for monetary and injunctive relief.  See *Johnson v. Onion*, 761 F.2d 224, 225 (5th Cir.1985) (concluding that the Declaratory Judgment Act cannot be used to obtain relief where appellant claimed that past judicial conduct violated his constitutional rights); see also *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir.1985) (noting that a "declaration that [a judge's] past conduct violated [a plaintiff's] constitutional rights...would be nothing more than a gratuitous comment without any force or effect").

Plaintiff's request for compensatory damages against Defendant Edwards, who was a court-appointed psychologist, is puzzling because neither plaintiff nor Defendant Edwards clearly describe her role in the litigation. Furthermore, the basis for the claim for relief is unclear from the pleadings (see above discussion about dismissal pursuant to Rule 8(a)). At oral argument, plaintiff somewhat clarified this claim, explaining that the report submitted by Edwards to the Superior Court of New Jersey and to the Supreme Court of New York caused damage to his reputation, as well as personal and public humiliation. This amounts to a claim for defamation.

Plaintiff argues that Edwards was not a court-appointed expert. However, a Certification, accompanied by an order signed by Judge Dangler suggests otherwise. While not identified by name in the order, Judge Dangler directed VRB to "authorize the therapist who has been meeting with son [DTB], to provide a report to the Court focusing on a resumption of parenting time between the plaintiff and his son..." Plaintiff does not challenge that the referenced therapist is Edwards.

Under the settled case law, Edwards asserts immunity because she acted as a court appointed expert. Nationally, courts have held that such a position is entitled to, at the very least, qualified immunity. E.g. *P.T. v. Richard Hall Community Mental Health Care Center*, 364 N.J. Super. 546, 837 A.2d 427 (App. Div. 2000) (expert psychologist appointed by trial court in child support proceedings was entitled to absolute immunity from litigation in connection with her duties and her role in child support proceedings, and thus psychologist was not subject to liability in father's action against psychologist, alleging that psychologist committed professional malpractice during her participation in child custody proceedings); *Lythgoe v. Guinn*, 884 P.2d 1085, 1093 (Alaska 1994) (granting absolute quasi-judicial immunity to court-appointed psychologist serving as custody investigator; citing public policy considerations); *Lavit v. Superior Court of Arizona*, 173 Ariz. 96,

839 P.2d 1141, 1146 (Ct.App.Div.1 1992) (distinguishing court-appointed psychologist in child custody disputes whose recommendations assist the court and who is immune, from privately retained expert whose role is that of an advocate for a party and who is not immune); *Howard v. Drapkin*, 222 Cal.App.3d 843, 860, 271 Cal.Rptr. 893, 903 (1990)(extending immunity to psychologist privately retained by parties as a mediator in child custody dispute); *S.T.J. v. P.M.*, 556 So.2d 244 (La.Ct.App.1990) (granting immunity to court-appointed psychologists in child sexual abuse and custody dispute based on performance of quasi-judicial function).

In the Third Circuit it has been held that a court-appointed child custody evaluator enjoyed judicial rather than prosecutorial immunity from federal civil rights liability in acting as an "arm of the court" in fulfilling a quasi-judicial role similar to that of guardian *ad litem* in interviewing parties, administering tests, and making recommendation at the court's request. *Hughes v. Long*, 242 F.3d 121 (3d Cir. 2001).

While Edwards' liability for her submission of her report to the Superior Court of New Jersey is shielded by the aforementioned immunities, immunity may not extend to her alleged filing of the sealed report with the Supreme Court of New York. Attached to plaintiff's Complaint is a letter, dated October 11, 2003, from Edwards to the Hon. Paula Omansky, J.S.C., Supreme Court of New York. Evidently this is the cover letter forwarding the report of Edwards to the Supreme Court of New York which plaintiff believes is in violation of the New Jersey state court's seal order.[4] As stated above, the plaintiff maintains that the forwarding of the report by Edwards' constitutes publication of libelous material.

---

[4] Plaintiff's Complaint contradicts his assertions that Edwards violated the seal order. Edwards' report was sent to the Supreme Court of the State of New York on October 11, 2003. The seal order was not entered by Judge Dangler until October 17, 2003.

Regardless of whether the law of New Jersey or New York applies, an action for libel must be commenced within one year after publication of the alleged libel. *N.J.S.A.* 2A:14-3; *New York Civil Practice Law §215*. As Edwards filed the report on October 11, 2003, the statute of limitations on a defamation claim expired on October 11, 2004. The instant Complaint was filed on September 1, 2005, well beyond the statute of limitations.

Therefore, any and all acts by Defendant Edwards within the scope of her appointment by the Superior Court of New Jersey is protected under judicial immunity. Any acts outside of this grant of immunity is barred by the statute of limitations.

## VI.

Lastly, the Complaint seeks injunctive relief against Defendants Edwards, Sifre, and Einhorn Harris. The plaintiff seeks extraordinary relief to enjoin the defendants from filing "wrongful, deceitful and injurious" submissions to "any person, entity, government agency, court or otherwise for any purpose whatsoever" and to formally retract any and all such submissions previously submitted to any person, entity, government agency, and court.

Considering these attorneys are actively engaged in litigation with plaintiff, in the Supreme Court of the State of New York, and to some extent the Superior Court of New Jersey, the District Court has "discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." *Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399, 408 (3d Cir.2005). While it is recognized that "abstention rarely should be invoked, and is only appropriate in a few carefully defined situations," *Id.*, the circumstances before the Court present facts that would support abstention. The proponent of *Younger* abstention must show that: (1) there are ongoing state

proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. *Tucker v. Ann Klein Forensic Center*, 174 Fed.Appx. 695 (3d Cir. 2006); *Gwynedd Properties, Inc. v. Lower Gwynedd Township*, 970 F.2d 1195, 1200 (3d Cir.1992).  In this case, there is a ongoing state proceeding, which court has an important interest in controlling and reviewing filings submitted to its courts, and is better equipped to determine whether any such filing is "wrongful, deceitful and injurious."

In conclusion, the suit is dismissed with prejudice for the reasons set forth herein.


|  |  |
|---|---|
| October 6, 2006 | S/ Peter G. Sheridan<br>PETER G. SHERIDAN, U.S.D.J. |